# STATE OF MICHIGAN

# COURT OF APPEALS

A. B. PETRO MART, INC. and AREF BAZZI,

Plaintiffs-Appellants,

v

ALI T. BEYDOUN INSURANCE AGENCY,
INC. and ALI BEYDOUN,

Defendants,

and

PRIME ONE INSURANCE,

Defendant-Appellee.

FOR PUBLICATION
September 15, 2016
9:05 a.m.

No. 327481
Wayne Circuit Court
LC No. 14-012291-CK

Before: CAVANAGH, P.J., and SAAD and FORT HOOD, JJ.

SAAD, J.

In this insurance coverage dispute, plaintiffs, A. B. Petro Mart, Inc. (Petro Mart) and Aref Bazzi, appeal the trial court's order that granted summary disposition in favor of defendant Prime One Insurance (Prime One).[1] For the reasons provided below, we affirm in part, reverse in part, and remand.

## I. NATURE OF THE CASE

Plaintiffs filed this suit to recover insurance benefits related to the destruction of a gas pump at a gas station Petro Mart operated. There is no question that Petro Mart did not own the gas pumps—Bazzi did. Petro Mart instead operated the pumps in the course of selling gasoline at the gas station. There also is no dispute that Petro Mart insured the gas pumps with Prime One. The trial court granted summary disposition in favor of Prime One with respect to Petro

---

[1] The other defendants, Ali T. Beydoun Insurance Agency and Ali Beydoun, were dismissed earlier in the proceeding and are not part of this appeal.

-1-

Mart's claim because it determined that Petro Mart did not possess an insurable interest in the gas pumps.

Pursuant to Michigan law, an insurance contract to protect an insured from loss of property is an aleatory indemnity contract. And in order to be entitled to indemnity under such an insurance contract, the insured must have an insurable interest in the property. The question posed by this appeal is whether the trial court correctly applied Michigan law to hold that the insured must have a legal interest or must be financially responsible for any damages to the insured property in order to constitute an insurable interest.

In Michigan, legal interest is not synonymous with insurable interest because an insured's pecuniary interest in the insured property is sufficient to constitute an insurable interest. And because Petro Mart's ability to operate its gas station is financially affected by the functioning or non-functioning of the insured gas pumps, regardless of whether it was responsible to repair any damage to the pumps, we hold that it had an insurable interest in the pumps, and the trial court erred when it ruled otherwise.

## II. BASIC FACTS

This dispute arises from an incident where an automobile ran into and caused the destruction of one of the gas pumps located at the gas station at 3735 East Vernor in Detroit. The crash started a fire and destroyed the pump. Bazzi was the sole shareholder and owner of Petro Mart, and Petro Mart is the entity that operated the gas station. However, the gas pumps, themselves, were owned by Bazzi. Petro Mart insured the gas pumps by purchasing an insurance policy with Prime One, which provided, among other things, $30,000 in coverage for gas pumps. After the accident, Petro Mart filed a claim with Prime One, which eventually declined coverage because it asserted that Petro Mart did not have an insurable interest in the gas pumps, as Bazzi—not Petro Mart—owned the pumps.

Plaintiffs sued Prime One for breach of contract because the gas pumps were expressly named and covered under the policy. Plaintiffs moved for summary disposition and argued that the clear and unmistakable language of the policy shows that the gas pumps were indeed covered under the policy. Plaintiffs further maintained that the fact that the policy was in the name of Petro Mart and the fact that Bazzi was the one who owned the pumps was not fatal because Prime One was well aware that Bazzi was the sole owner of Petro Mart and acknowledged this in its own claim file, where it referred to Bazzi as the "insured" many times. Thus, plaintiffs asserted that Prime One should not be allowed to claim that there was no coverage for lack of an insurable interest. Plaintiffs further argued that if there was no coverage due to a lack of an insurable interest, then the policy would be illusory because, even though premiums were paid for coverage for the gas pumps, no one could ever recover for any such loss. Plaintiffs also contended that Bazzi was entitled to the claim proceeds because the he was a third-party beneficiary under the insurance contract.

Prime One responded to the motion and argued that there was no genuine issue of material fact that the policy holder, Petro Mart, did not have an insurable interest in the gas pumps. Prime One noted that whether Petro Mart was a closely-held corporation with only Bazzi as its owner does not change this outcome because Michigan law is clear that corporations

are separate entities from their owners or stockholders. Further, Prime One says it was not under any obligation to investigate the interest of the applicant, Petro Mart, in the subject property. Moreover, Prime One argued that Bazzi cannot be considered a third-party beneficiary to the contract because there is nothing in the policy to demonstrate that Prime One directly promised to give or do anything for Bazzi. Prime One also claimed that the contract was not illusory because had Petro Mart actually owned the property, the policy would have provided coverage.

The trial court noted that there was no dispute that Bazzi owned the pumps and that Petro Mart merely operated them without any leasehold agreement. The court agreed with Prime One's arguments and found that, with no legal ownership interest in the pumps and no obligation to repair the pumps, Petro Mart did not suffer a pecuniary loss and therefore did not have an insurable interest in the property, which precluded recovery. The court further ruled that Bazzi cannot recover as a third-party beneficiary because nothing in the policy directly provides any benefit for Bazzi. The trial court also held that the policy was not illusory because "[i]n the event that Petro Mart had actually owned the property and/or had some insurable interest in the property, the policy would have provided coverage for at least a portion of the loss." Consequently, the trial court denied plaintiffs' motion and instead granted summary disposition in favor of Petro Mart pursuant to MCR 2.116(I)(2).

## III. STANDARD OF REVIEW

This Court reviews a trial court's decision on a motion for summary disposition de novo. *Johnson v Recca*, 492 Mich 169, 173; 821 NW2d 520 (2012). Prime One moved for summary disposition under MCR 2.116(C)(10), which tests the factual sufficiency of a complaint and is reviewed by considering the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). "Summary disposition pursuant to MCR 2.116(C)(10) is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *McCoig Materials, LLC v Galui Constr, Inc*, 295 Mich App 684, 693; 818 NW2d 410 (2012). " 'Summary disposition is properly granted [under MCR 2.116(I)(2)] to the opposing party if it appears to the court that that party, rather than the moving party, is entitled to judgment.' " *Michelson v Voison*, 254 Mich App 691, 698; 658 NW2d 188 (2003), quoting *Sharper Image Corp v Dep't of Treasury*, 216 Mich App 698, 701; 550 NW2d 596 (1996).

Likewise, the interpretation of an insurance contract and whether one has an "insurable interest" are questions of law that we review de novo. *Citizens Ins Co v Pro-Seal Service Group, Inc*, 477 Mich 75, 80; 730 NW2d 682 (2007); *Morrison v Secura Ins*, 286 Mich App 569, 572; 781 NW2d 151 (2009).

## IV. ANALYSIS

## A. PLAINTIFF BAZZI

-3-

Under the clear language of the policy, the only named insured is Petro Mart. While Bazzi signed the insurance application,[2] he is not named anywhere in the policy itself. Indeed, the policy provides that "A B Petro Mart, Inc." is the sole named insured. Thus, without being a party to the insurance contract, Bazzi cannot maintain a breach of contract claim against Prime One. See *Miller-Davis Co v Ahrens Const, Inc*, 495 Mich 161, 178; 848 NW2d 95 (2014) (stating that to succeed on a breach of contract claim, one of the things a plaintiff must prove is that there was a contract between the parties).

Plaintiffs assert that Bazzi nonetheless can sustain a claim against Prime One because he is a third-party beneficiary of the contract. We disagree. Michigan's third-party beneficiary statute states, in pertinent part, the following:

> Any person for whose benefit a promise is made by way of contract, as hereinafter defined, has the same right to enforce said promise that he would have had if the said promise had been made directly to him as the promisee.

> (1) A promise shall be construed to have been made for the benefit of a person whenever the promisor of said promise has undertaken to give or to do or refrain from doing something directly to or for said person. [MCL 600.1405.]

"[N]ot every person incidentally benefitted by a contractual promise has a right to sue for breach of that promise . . . ." *Brunsell v City of Zeeland*, 467 Mich 293, 296; 651 NW2d 388 (2002). "Thus, only intended, not incidental, third-party beneficiaries may sue for breach of a contractual promise in their favor." *Schmalfeldt v North Pointe Ins Co*, 469 Mich 422, 427; 670 NW2d 651 (2003). Accordingly, "[a] person is a third-party beneficiary of a contract only when that contract establishes that a promisor has undertaken a promise directly to or for that person." *Id.* at 428. As already noted, the insurance contract simply does not refer to Bazzi. Hence, with no reference to Bazzi in the contact, it is clear that the contract itself did not provide any basis to conclude that Prime One (the promisor) undertook any promise directly to or for Bazzi. Therefore, as a matter of law, Bazzi is not a third-party beneficiary.

Because Bazzi is neither a party to the contract nor a third-party beneficiary, he cannot maintain his action for breach of contract against Prime One. Accordingly, the trial court correctly granted summary disposition in favor of Prime One against Bazzi.

B. PLAINTIFF PETRO MART

---

[2] Notably, in the area for "Name Insured" on the application, it only states "A B Petro Mart Inc." Moreover, the fact that Bazzi signed the application is not of great significance, as it is well established that corporations can only act through their agents. *Mossman v Millenbach Motor Sales*, 284 Mich 562, 568; 280 NW 50 (1938). We further note that the fact that Bazzi is the sole owner of Petro Mart does not affect our analysis, as corporations are separate entities from their shareholders, "even where one individual owns all the corporation's stock." *Rymal v Baergen*, 262 Mich App 274, 293; 686 NW2d 241 (2004).

Plaintiffs argue, and we agree, that the trial court erred when it ruled that Prime One had no obligation to pay because the insured, Petro Mart, did not have an insurable interest in the gas pumps.

"[U]nder Michigan law, an insured must have an 'insurable interest' to support the existence of a valid . . . insurance policy." *Allstate Ins Co v State Farm Mut Auto Ins Co*, 230 Mich App 434, 439; 584 NW2d 355 (1998). The reason for this requirement is based on public policy concerns. "Specifically, it arises out of the venerable public policy against 'wager policies'; which, as eloquently explained by Justice COOLEY, are insurance policies in which the insured has no interest, and they are held to be void because such policies present insureds with unacceptable temptation to commit wrongful acts to obtain payment." *Morrison*, 286 Mich App at 572, citing *O'Hara v Carpenter*, 23 Mich 410, 416-417 (1871); see also *Crossman v American Ins Co of Newark, NJ*, 198 Mich 304, 308; 164 NW 428 (1917). Therefore, " 'a policy issued when there is no such interest is void, and it is immaterial that it is taken in good faith and with full knowledge.' " *Morrison*, 286 Mich App at 572, quoting *Agricultural Ins Co v Montague*, 38 Mich 548, 551 (1878).

However, Michigan's common law instructs that an "insurable interest" is not synonymous with "ownership." Instead, an insurable interest can arise from "*any kind of benefit* from the thing so insured or any kind of loss that would be suffered by its damage or destruction." *Morrison*, 286 Mich App at 572-573 (emphasis added); see also *VanReken v Allstate Ins Co*, 150 Mich App 212, 219; 388 NW2d 287 (1986); 3 Couch, Insurance, 3d, § 41:1 ("Insurable interest may be defined as any lawful and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction, or pecuniary damage."). Our Supreme Court instructed a hundred years ago that "[an insurable] interest may be derived by possession, enjoyment, or *profits of the property*, security or lien resting upon it, or it may be other certain benefits growing out of or dependent upon it." *Crossman*, 198 Mich at 308-309 (emphasis added).

In dismissing Petro Mart's claim, the trial court principally relied upon the fact that Petro Mart did not have either an ownership or leasehold interest in the gas pumps.[3] While it is true that Petro Mart had neither of these interests and was not responsible for the repair of the pumps, these facts, standing alone, do not preclude a finding of an insurable interest. See *id.*; *Morrison*,

---

[3] The trial court primarily relied on *Secura Ins Co v Pioneer State Mut Ins Co*, 188 Mich App 413; 470 NW2d 415 (1991). In *Secura*, there was a question regarding whether a person who sells a home and still lives in the home after the closing had an insurable interest in the property. The plaintiff insurance company argued that the sellers "had an insurable interest either as tenants or as parties to the purchase agreement." *Id.* at 414. Thus, due to the issues raised by the parties, this Court analyzed the issue in the context of whether the sellers still maintained an insurable interest based either on a leasehold theory or on a contractual theory. *Id.* at 415. But to read *Secura* as standing for the proposition that these are the *only* avenues for any party to maintain an insurable interest, as the trial court implied, is incorrect. *Secura* simply analyzed the issues as presented and did not limit or alter the existing case law on insurable interest.

286 Mich App at 572-573.  One of the aspects of Petro Mart's business was selling gasoline at the insured location.  Therefore, it is incontrovertible that Petro Mart had more than an incidental, pecuniary interest in the gas pumps.  Petro Mart necessarily received income and profits from the use of the gas pumps, including the one that was destroyed in the accident.  As already noted, an insurable interest can be found, absent any actual ownership interest, if one merely obtains "profits of the property," *Crossman*, 198 Mich at 308-309, or derives "*any kind of benefit* from the thing so insured," *Morrison*, 286 Mich App at 572-573 (emphasis added).

Indeed, the salient inquiries to ask and answer when determining whether an insurable interest exists all revolve around whether the insured would suffer a direct, pecuniary loss from the property's destruction.  If such answer is "yes," then there is an insurable interest.  See *Crossman*, 198 Mich at 308-311 and cases cited therein.  Given the circumstances here, we must answer this question in the affirmative.  Clearly, Petro Mart would gain some advantage by the continuing existence of the gas pumps and, conversely, suffer some loss or disadvantage by the destruction of the pumps.  Importantly, this is not an instance where the loss Petro Mart suffered was "indirect or sentimental"; instead, with Petro Mart generating income from the sale of gasoline through the use of the pumps, the loss of one of those gas pumps results in a "direct and actual" pecuniary loss.  *Id.* at 309 (quotation marks and citation omitted).  The fact that Petro Mart was not financially responsible for repairing any damage to the pumps is not controlling—it still had a pecuniary interest due to the commercial business it operated.  We note that while any lost business profits appear to not be recoverable under the insurance policy, this fact is immaterial in determining whether Petro Mart had an insurable interest in the gas pumps, themselves.  Therefore, because Petro Mart had a clear, substantial, and direct pecuniary interest in the pumps, we hold that it had an insurable interest in the damaged gas pump.  Our finding of an insurable interest is in keeping with the long-standing public policy underlying the insurable-interest doctrine.  Accordingly, the trial court erred in dismissing Petro Mart's breach of contract claim against Prime One.[4]

Plaintiffs also argue that Petro Mart is entitled to receive 12% penalty interest under MCL 500.2006(1) of the Uniform Trade Practices Act, MCL 500.2001 *et seq.*, for Prime One's alleged unreasonable delay in paying on the claim.  But because the trial court never addressed this issue, although may do so upon remand, we decline to address it here for the first time.  See *Autodie, LLC v City of Grand Rapids*, 305 Mich App 423, 431; 852 NW2d 650 (2014) (declining to address unpreserved issue).

We affirm the grant of summary disposition in favor of Prime One as against plaintiff Bazzi, but we reverse the grant of summary disposition in favor of Prime One as against plaintiff Petro Mart because Petro Mart had an insurable interest in the gas pumps.  We remand for

---

[4] Because we hold that Petro Mart had an insurable interest in the gas pumps, plaintiffs' alternate contention that the insurance contract was illusory is rendered moot, and we need not address it. See *Ewing v Bolden*, 194 Mich App 95, 104; 486 NW2d 96 (1992).

proceedings not inconsistent with this opinion. We do not retain jurisdiction. No costs are taxable, as neither side prevailed in full. MCR 7.219.

/s/ Henry William Saad
/s/ Mark J. Cavanagh
/s/ Karen M. Fort Hood